UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

v.

Case No: 2:20-cr-135-KCD-DNF

FERNANDO ESPINOSA LEON,

Defendant,

/

## ORDER

Before the Court is Defendant Fernando Espinosa Leon's pro se motion for compassionate release from a 70-month sentence for health care fraud and aggravated identity theft. (Doc. 64.) Defendant argues that he could not have committed these crimes because he was not in the United States when they occurred. (Doc. 66 at 3.) He also requests that the Court consider his age, health, family circumstances, and rehabilitation status. (Doc. 64 at 22.)

The Government responds that the factors identified do not show an "extraordinary and compelling reason" for a reduced sentence under 18 U.S.C. § 3582(c)(1)(A). (*See* Doc. 65.) The Court agrees with the Government's assessment, and for the reasons below, the motion is **DENIED**.

## I. Background

Defendant tells a winding story that begins with a fractured skull and losing most vision in one eye before losing his job. (Doc. 64 at 18.) He was then

unemployed for nearly a year, became homeless and depressed, and began using methamphetamine. (*Id.*) During this time, Defendant alleges he met a man named Ruben, who offered to help him "buy a clinic" as a way to "get [him] back on [his] feet." (*Id.*) Defendant accepted the offer and went with Ruben to meet Chino and Lazarito, two other men experienced in starting and running these "clinics." (*Id.*)

Chino and Lazarito allegedly told Defendant that "this business was legit and that [he] [would] have no issues at all" setting it up. (Doc. 69 at 2.) At some point after the clinic launched, Defendant abruptly left the United States to care for his sick mother in Cuba. (*Id.*) Defendant claims that, prior to his departure, Lazarito offered to buy the clinic and "put [it] under his name." (*Id.*) This transfer of ownership evidently never occurred.

While the clinic was in operation, "approximately $4 million in fraudulently obtained Medicare fraud proceeds were deposited into a business checking account that Defendant managed and controlled." (Doc. 65 at 8.) Additionally, "at least $1.4 million of ill-gotten proceeds were diverted to Defendant, either in the form of cash withdrawals or checks issued to him or the corporations he created." (*Id.*) Defendant was later arrested, extradited to the United States, and pled guilty to health care fraud and aggravated identity theft. (Doc. 64 at 19.) This Court sentenced him to 70 months in prison. (Doc. 56.)

2

Defendant argues that his sentence should be reduced because the elusive figures Lazarito and Chino are the true culprits. They created phony corporations in Defendant's name. (Doc. 64 at 19) They funneled $4 million in Medicare fraud proceeds into Defendant's bank account. (*Id.*) And of course, they withdrew cash or issued checks in Defendant's name totaling $1.4 million. (*Id.*) By Defendant's telling, he sat in Cuba, innocent as a lamb, while "Lazarito and Chino" committed the crimes that landed him in prison. (*Id.*)

Defendant also tacks on a blanket request to consider his age, health, family circumstances, and rehabilitation status in considering a sentence reduction. (*Id.* at 22)

## II. Legal Standard

A district court has no inherent authority to modify a sentence and may only do so "when authorized by a rule or statute." *United States v. Puentes*, 803 F.3d 597, 606 (11th Cir. 2015). The statutory exception at issue here is § 3582(c)(1)(A), which permits a defendant to move for "compassionate release." To succeed, he must show: (1) an extraordinary and compelling reason warrants early release, (2) his release is consistent with the Sentencing Commission's applicable policy statement, and (3) the § 3553(a) factors weigh in favor of his release. *United States v. Giron*, 15 F.4th 1343, 1348 (11th Cir. 2021); *see also United States v. Tinker*, 14 F.4th 1234, 1237 (11th Cir. 2021).

3

"When the district court finds that one of these prongs is not met, it need not examine the other prongs." *Giron*, 15 F.4th at 1348.

The sentencing guidelines provide six "extraordinary and compelling reasons" for a sentence reduction: the defendant's medical circumstances, age, family circumstances, status as a victim of sexual or physical abuse while in custody, and "[o]ther [r]easons" that are similar in gravity to those categories. USSG § 1B1.13(b), comment n. 1-6. Rehabilitation status may also be considered alongside the other five reasons, though it is not an independent "extraordinary and compelling reason." USSG § 1B1.13(d).

A defendant seeking compassionate release "bears the burden of proving entitlement to [such] relief." *United States v. Kannell*, 834 F. App'x 566, 567 (11th Cir. 2021). To prove this, he must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582 (c)(1)(A); *see also United States v. Harris*, 989 F. 3d 908, 912 (2021).

### III. Discussion

To begin, the factual disputes Defendant raises in his motion concerning his offense conduct are irrelevant here. Defendant pled guilty to health care fraud and identity theft. (Doc. 36.) Specifically, he admitted to fraudulently billing Medicare for durable medical equipment. (*Id.* at 17.) And he admitted

4

to stealing the identity of thousands of Medicare beneficiaries and medical practitioners to obtain a multimillion-dollar payout. (*Id.*) This Court accepted that guilty plea after finding that a sufficient factual basis supported the charges. *See* Fed. R. Crim. P. 11(b)(3). Defendant's new story cannot overcome his own prior, unequivocal admissions.

As best the Court can tell, Defendant primarily argues that he is innocent because two other men committed the underlying crimes. (Doc. 64 at 19.) But the Supreme Court recently held that "a compassionate release motion is not a vehicle for raising [a] claim [of actual innocence]." *Fernandez v. United States*, 146 S. Ct. 1292, 1306 (2026). By "asserting his actual innocence," he "'challenge[s] the validity of his conviction,' [] factually or legally, and that lies 'close to the core of habeas corpus.'" *Id.* Because Defendant's petition is for compassionate release rather than habeas corpus, actual innocence is unavailable here.

Moving to Defendant's relevant argument, he uses a single sentence to ask the Court to consider his age, health, family circumstances, and rehabilitation status. (Doc. 64 at 22.) He provides no documentation or proof showing that he meets the requirements of any "extraordinary and compelling circumstance" that he cites. (*See* Doc. 65 at 5-7) As a result, Defendant's circumstances appear no different to this Court than on the day of his sentencing.

## IV. Conclusion

Defendant's tale of Chino and Lazarito cannot save him from his prior guilty plea. Under § 3528 (c)(1)(A), a court need only determine that one of three prongs is satisfied to deny a motion for compassionate release. *Tinker*, 14 F.4th at 1237. Defendant's failure to satisfy the "extraordinary and compelling circumstance" prong renders further inquiry unnecessary. His motion for compassionate release (Doc. 64) is thus **DENIED**.

**Ordered** in Fort Myers, Florida on June 26, 2026.

Kyle C. Dudek
United States District Judge

6